Martin, J.
delivered the opinion of the court, after stating the pleadings and the evidence. It is true, the slaves were not sold separately and for distinct prices, and after the sale, the ven-dees refused to retain any of them, and rescind the sale for the others, but insisted on an entire compliance with, or an absolute rescission of the *697 contract. These circumstances do not, however, appear to us sumcient to authorise the vendees in demanding the rescission of the sale of ail the slaves, on account of a redhibitory defect, in one or more of them. For, they did not constitute a whole, as a company of comedians or a span of horses, in which the value of each of the component parts, is increased by its union to the rest. It is true, after the sale, the vendees declared their willingness to annul it in toto, and refused to do so partially—a circumstance, which is presented to us as giving rise to the presumption, that they would not have agreed to the purchase of any number of these slaves, less than the whole. The presumption, however, appears to us too slight to be received as evidence : we therefore conclude, that the parish court did not err, in refusing to rescind the sale in toto.
The habit of running away is a redhibitory vice. Civ. Code, 358, art 79. A warranty against it is, therefore, of the nature of the contract of sale of slaves, i. e. it needs not to be expressed in the deed. Hence the silence of the vendor in this case, as to this warranty, does not prevent him from being bound thereto. Neither does it appear to us, that the circumstance of his having disclosed to his vendees the names of his own vendors, and referred, in his act of sale, to *698 those of the latter, in any decree lessens his lia-^.j. J °
This warranty, however, not being of the es-ser.ce of .the contract, may be excluded by the agreement of the parties. But this ag> cement must be proven, and the exclusion must be a fair one, that is to say, the vendor must be ignorant of or disclose the existence of the vice. In the present case, it is clear, that the disposition of six of these slaves to run away was known to the vendor, and that he did not communicate it to the vendees. The understanding of the parties, that the slaves should remain on trial, during a fortnight, with the vendees, at the risk of the vendor, in case they ran away, does not enable us to conclude, that the intention of the parties was that, if after that period, they or any of them ran away, and the vendees could prove a previous habit of running away, they should not avail themselves of the legal warranty.
The existence of this habit in the six slaves, of whom the sale is rescinded by the judgment of the parish court, clearly appears from the evidence on the record, particularly the deposition of the jailor and the orders of the mayor.
The defendant was bound, at the inception of the suit, to reimburse the price of these slaves, but this price was not fixed by the parties and required to be liquidated: the parish court, there *699 fore erred, in allowing interest from the date of the judicial, demand : but no hire can be allowed,
Both jeo« ties complain of the valuation made in the parish court, the vendor thinking it extra-vacant and the vendees insufficient. Perhaps this is Hie best evidence of its correctness. It does not appear to us so materially incorrect as to authorise our interference.
It is. therefore, ordered, adjudged and decreed, that the judgment of the parish court be annulled, avoided and reversed, and this court proceeding to render such a judgment, as in its opinion, ought to have been rendered in the parish court, it is ordered, adjudged and decreed, that the sale of the r.egroes Lindor, Tony, Sunday, Isa;?/;, Horace and Boucaud, be rescinded and made null and void, and that the plaintiffs do recover from the defendant the sum of six thou* sand five hundred dollars with costs in the parish court, and that the plaintiffs pay costs in this court on both appeals.
See the same case, 7 Martin, 38.